UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **EMILY RODRIGUES, and** : <br> **FRANCISCO RODRIGUES,** : <br> *Plaintiffs* : <br> : <br> v. : <br> : <br> **DANIEL DOLAN, alias, individually** : <br> **and in his official capacity as a** : <br> **Pawtucket police officer, and CITY OF** : <br> **PAWTUCKET, by and through its** : <br> **Finance Director Joanna L'Heureux,** : <br> *Defendants* : | C.A. No. 22-cv-138-JJM-PAS |

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

**I.    INTRODUCTION**

Plaintiffs Emily and Francisco Rodrigues ("Plaintiffs" or "Mr. and Mrs. Rodrigues") respectfully submit this supplemental briefing in support of their opposition to Defendant's motion for summary judgment, and specifically addressing Defendant's claim of qualified immunity, pursuant to this Court's text order dated September 12, 2025. Plaintiffs urge this Court to deny Defendant's motion for summary judgment, including Defendant's qualified immunity defense for the reasons articulated herein.

Defendant Dolan is not entitled to the defense of qualified immunity because his conduct violated clearly established law, despite his attempts to twist the facts to fit his fictionalized account. As the First Circuit reiterated only this month, qualified immunity cannot protect the Defendant from submitting this matter to a jury, because even this judicially created protection for state actors does not apply when the parties present different versions of the facts:

> [W]hile we have jurisdiction to resolve purely *legal* issues, we have *no* jurisdiction to resolve *fact* disputes. Put most simply, "the interlocutory appeal to vindicate the right not to be tried is unavailable when there is no legal uncertainty; there is no separate 'right not to be tried' on the question whether the defendants did the deeds alleged; that is *precisely* the question for trial."

*Miller v. Jackson*, No. 24-1351, 2025 WL 2611944, at *6 (1st Cir. Sept. 10, 2025) (citing *Johnson v. Jones*, 515 U.S. 304, 312 (1995); *Elliott v. Thompson*, 937 F.2d 338, 341 (7th Cir. 1991); *Brown v. Dickey*, 117 F.4th 1, 6 (1st Cir. 2024) ("stressing that the court lacks jurisdiction if the officers' appeal turns on their 'claim that "the facts asserted by the plaintiff[] are untrue, unproven, warrant a different spin, tell only a small part of the story, [or] are presented out of context." ' " (quoting *McKenney v. Mangino*, 873 F.3d 75, 80-81 (1st Cir. 2017))) (emphasis in original).

To support his argument that his conduct passes Constitutional muster, Defendant Dolan relies on such outrageous distortions of the factual record that only a jury can sort out the truth. Until then, and making all reasonable inferences in Plaintiffs' favor as the Court must, qualified immunity is out of reach for Defendant Dolan. *Miller*, 2025 WL 2611944, at *1 ("Summary judgment in these kinds of cases turns on whether the record — read most favorably to plaintiff, with every reasonable inference it permits — reveals a material-fact dispute barring the officers' qualified-immunity claim or shows their right to judgment as a matter of law."). Thus, based on Plaintiffs' version of events, Defendant Dolan violated clearly established law when he pursued Mrs. Rodrigues in retaliation for her husband's protected speech, and again when he arrested her with no probable cause that she had committed any crimes.

## II.  STANDARD FOR QUALIFIED IMMUNITY

Plaintiffs can show that an officer's conduct violated established law "by citing controlling caselaw — or a consensus of persuasive caselaw — finding a violation in a factually *similar* situation that places [their] right 'beyond debate' (the point is [they] need not cite binding caselaw

involving *identical* facts).'' *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 39 (1st Cir. 2024) (citing *District of Columbia v. Wesby* 583 U.S. 48, 63 (2018)) (emphasis in original); *see also Hall v. S. Kingstown Police Dep't*, No. 1:23-CV-00359-MSM-PAS, 2025 WL 1638521, at *8 (D.R.I. June 9, 2025) ("The first sub-part requires the plaintiff to identify either 'controlling authority' or a 'consensus of cases of persuasive authority' sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm."). Plaintiffs "can also satisfy that requirement by citing a 'general' standard 'already identified in the decisional law' that 'appl[ies] with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful' (a rule that prevents absurd results)." (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Sause v. Bauer*, 585 U.S. 957, 959-60 (2018) (per curiam); *Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (per curiam)).

### III.   ARGUMENT

#### A. Taking All Reasonable Inferences In Plaintiffs' Favor, There Was No Probable Cause to Arrest Mrs. Rodrigues.

"The Fourth Amendment 'imposes limits on search-and seizure powers in order to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.' " *Noem v. Vazquez Perdomo*, 606 U.S. ____ (2025) Sotomayor, J. *dissenting,* (quoting *United States v. Martinez-Fuerte*, 428 U. S. 543, 554 (1976)). It is not only well-established; it is axiomatic that a police officer cannot arrest a person without probable cause that the person has committed a crime. *See Beck v. State of Ohio,* 379 U.S. 89, 91 (1964); *United States v. Figueroa,* 818 F.2d 1020, 1023 (1st Cir. 1987).

Here, based on the undisputed facts and taking all disputed facts and reasonable inferences in Plaintiffs' favor, there was no probable cause for Defendant to arrest Mrs. Rodrigues for any of the three charges he instituted against her.

- The charge of obstructing a peace officer was without probable cause under established law because there was no time or clear direction given with which Mrs. Rodrigues could comply, and Defendant Dolan was not performing any authorized act;

- Under long-established caselaw, there was no probable cause for the resisting arrest charge, because a person may defend themselves against unreasonable force, and the person must be aware that they are being arrested; and

- Decades of clearly established law hold that the "loud noises" subsection of Rhode Island's disorderly conduct statute under which Defendant charged Mrs. Rodrigues cannot include speech, and whatever unidentified "fighting words" Defendant avers that Mrs. Rodrigues used would not rise to that rigorous constitutional test anyway.

i. **Defendant is not entitled to Qualified Immunity for the charge of Obstructing a Peace Officer.**

R.I. Gen. Laws § 11-32-1 makes it a misdemeanor to "obstruct any officer, civil, military, or otherwise, including any state, city, or town police, deputy sheriff, or fire fighter, while in the execution of his or her office or duty." According to the R.I. Supreme Court, § 11-32-1 requires "(1) that the defendant acted knowingly, (2) that the defendant 'resisted' or 'obstructed' a police officer, (3) that the defendant knew the police officer was in fact a police officer, and (4) *that the police officer was performing an authorized act within his official capacity*." *State v. Duffy*, 441 A.2d 524, 524 (R.I. 1982) (emphasis added). As discussed below, it is clearly established that there cannot be probable cause for arrest if the defendant did not "resist" or "obstruct" an officer, and absent proof that an officer is *lawfully* executing his *official* duties, the officer cannot be obstructed. Both of these elements are factually disputed and must be construed in Plaintiff's favor.

   a. **Clearly Established Law Requires That to Interfere With an Authorized Act, a Person Must Be Given Sufficient Time to Comply.**

First, there is a consensus of persuasive caselaw that clearly establishes that a person cannot obstruct an officer if they are not given sufficient time to comply with police orders, even lawful orders, which includes at least two circuit courts and many district and state courts across the country. *See Coley v. State*, 178 Ga. App. 668, 344 S.E.2d 490, 491 (1986) (reversing obstruction conviction where defendant ignored a police officer's orders "to move away from [defendant's] truck" but did not "obstruct[ ] or hinder[ ] [the officer] in any way in the performance of his duty"); *WBY, Inc. v. DeKalb County, Georgia*, 695 F. App'x 486, 493 (11th Cir. 2017) ("[T]he simple fact that Schindler may have hesitated in complying with [the officer's] requests to 'back down' is not alone sufficient to show obstruction under the facts of this case."); *Ruiz v. Polar*, No. 24-1215, 2025 WL 733238, at *1 (9th Cir. Mar. 7, 2025) (citing *In re Chase C.*, 243 Cal. App. 4th 107, 117 (2015) and *People v. Quiroga*, 16 Cal. App. 4th 961, 966 (1993) (cases from 2015 and 1993 establishing that failure to immediately comply with officer's instructions does not constitute probable cause for obstruction); *Palmer v. Sanderson*, 9 F.3d 1433, 1434 (9th Cir. 1993) (held that, where plaintiff disobeyed officer's order by getting into car to avoid wind and rain, not only was there no probable cause to arrest Mr. Palmer for obstruction, but also that "no reasonable officer could believe there was."); *Smith v. Kelly*, No. C11-0623-RAJ-JPD, 2013 WL 5770344, (W.D. Wash. May 2, 2013), *report and recommendation adopted in part*, No. C11-623RAJ, 2013 WL 5770337 (W.D. Wash. Oct. 24, 2013) (where plaintiff did not comply with initial command to "get over here" and "non-compliance lasted approximately three seconds as he walked a few steps in the opposite direction," the officer "did not have probable cause to arrest plaintiff for obstruction" and "a reasonable officer would have concluded that the plaintiff's momentary failure to comply, without more, was insufficient to arrest him for obstruction.").

The district court's decision in *Tolston v. City of Atlanta, Georgia*, is particularly helpful here. 723 F.Supp.3d 1263 (N.D. Ga. 2024). There, the court held that the defendant officer was not entitled to qualified immunity for an arrest made in October 2018, based on the plaintiff's version of events, because it was clearly established, and the officer was therefore on notice, "that a citizen cannot be arrested merely for making 'simple inquir[ies]' about an officer's conduct" and failing to instantly comply while making those inquiries. *Id.* at 1308 (quoting *Davis v. Williams*, 451 F.3d 759, 764 n.8 (11th Cir. 2006) (no arguable probable cause to arrest litigant who repeatedly questioned police officer about why he was on his property, asked to speak with the officer's supervisor, and did not obey the officer's direction to "[l]eave now").

Another recent case decided by this Court is also instructive. In *Hall v. South Kingstown Police Department*, this Court expressly addressed the issue of whether officers were entitled to qualified immunity when they arrested the plaintiff for obstruction of an officer after she failed to immediately comply with an order to get back in her car and move her car and engaged in "about three minutes' worth of verbal exchange that turned intense only in the last minute." No. 1:23-CV-00359-MSM-PAS, 2025 WL 1638521, at *2, 6 (D.R.I. June 9, 2025). This Court held that "[t]he Court is [] unconvinced that Mrs. Hall's failure to drop everything and move her vehicle genuinely obstructed the officers' investigation," which was a necessary element of the charge. *Id.* at *5. This Court further held that the officer was **not** entitled to qualified immunity after construing all facts in Plaintiff's favor. *Id.* at *8.

In light of the abundance of case law across the country over decades that has consistently found that officers lack probable cause to arrest suspects for failing to immediately comply with police orders, the law was clearly established. Thus, viewing the facts in the light most favorable to the Plaintiffs, , no reasonable officer could believe that where the total four (4) seconds that

passed from the time Defendant Dolan approached the front of his cruiser until he made physical contact with Mrs. Rodrigues on the sidewalk, justified her seizure and arrest for obstructing an officer.  Plaintiff's Supp. Statement of Undisputed Facts ("SSUF"), ECF Doc. 38, ¶ 63.  Nor could any reasonable officerbelieve that Mrs. Rodrigues's failure to immediately comply with his order would have prevented him from carrying out his "investigation" of her traffic infraction.

      **b. Clearly Established Law Requires That a Person Must Interfere With an Authorized Act to Be Arrested for Obstructing an Officer and Factual Disputes Require Submission of This Element To A Jury.**

Clearly established law demonstrates that absent proof that an officer is *lawfully* executing his *official* duties, the officer cannot be obstructed.  The R.I. Supreme Court held in 1982 that a necessary element of the crime of obstruction is "*that the police officer was performing an authorized act within his official capacity*."  *Duffy*, 441 A.2d at 524 (emphasis added); see also *Robinson v. City of San Diego*, 954 F. Supp. 2d 1010, 1024–25 (S.D. Cal. 2013) ("the subsequent arrest of Robinson for failure to provide identification or comply with Officer McClain's orders was unlawful because it lacked probable cause.  A peace officer is not lawfully performing his duties if he is unlawfully arresting or detaining someone and if the arrest is unlawful, there is no violation of [California's obstruction statute]").  Therefore, absent proof that an officer is *lawfully* executing his official duties, the officer cannot be obstructed in performing his office or duty.

      Construing all facts and inferences in Plaintiffs' favor, a reasonable jury can easily find that it is *not* within an officer's official duty to recklessly drive straight toward a person suspected of a minor traffic violation, scream orders as the person finishes crossing the street to avoid his erratic, dangerous driving, and then give them less than four seconds to comply before seizing them and swinging them around like a rag doll.  Pls' SDF (ECF Doc. 37) ¶¶ 18, 19, 20; Plaintiff's Supp. Statement of Undisputed Facts ("SSUF")( ECF Doc. 38) ¶¶ 61, 63, 64.  Defendant Dolan's

excuse for pursuing Mrs. Rodrigues was that he was conducting a traffic stop; however, " '[a] traffic stop for a suspected violation of law is a "seizure" of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment.' " *Harper v. Town of Newburgh*, No. 18 CIV. 2647 (PED), 2020 WL 1140858, at *6 (S.D.N.Y. Mar. 6, 2020) (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)).

Here, Mrs. Rodrigues had already gotten out of her car and was crossing the street on her way to Payne Park before Defendant drove straight at her, and when he screamed at her to get back in the car, he never said anything about a traffic stop.  SDF ¶20; SSUF ¶62 ("[W]hen Mrs. Rodrigues asked Defendant Dolan why he wanted her to get in the car or on the car, he replied [in her words], " 'Get up against the f-ing car,' and he tried to grab me, and I kept walking."). Construing all reasonable inferences in Mrs. Rodrigues' favor, a reasonable police officer could not have concluded that he was acting within his lawful authority when he sped his car toward her while she was still crossing the street, jumping out of his car and screaming at her without giving her any reasonable time to comply or to understand that he was (ostensibly) lawfully stopping her for a traffic infraction.

Furthermore, no reasonable officer could believe that he acts within his lawful authority when he attempts to detain or arrest someone specifically in retaliation for her partner's protected speech.  It is absurd to propose that a reasonable jury *must* find Defendant Dolan acted reasonably when he chased down Mrs. Rodrigues and charged her with obstruction, and even more so when the initial reason for the stop was, in Dolan's words, "because of [her husband's] immature behavior." Specifically, the trigger for Defendant Dolan's retaliatory act was that Mr. Rodrigues announced his intention to file a civilian complaint.  SSUF ¶61.  *See* discussion at (a)(iii), *infra.*

    **ii.**     **Clear Authority Established That There Was No Probable Cause to Arrest Mrs. Rodrigues for Resisting Arrest.**

This departure from his official duty is fatal to Defendant Dolan's attempt to establish probable cause for the resisting arrest charge as well as obstructing an officer. It was clearly established before Plaintiffs or Defendant were even born that "before an accused can be found guilty of assaulting a policeman [sic], it must be shown that at the time he was struck, the officer was in uniform and was 'engaged in the performance of his duty.' It is this last-quoted phrase which preserves defendant's right of self-defense." *State v. Ramsdell*. 285 A.2d 399, 404 (R.I. 1971) (internal quotations omitted). The *Ramsdell* court went to great pains to explain its analysis of this element:

> It is elementary that a police officer may use only such force as is necessary to effectuate an arrest. *Tessier v. LaNois*, 198 A.2d 142 (1964). [R.I. Gen Laws] Section 12-7-8 expresses the rule in the negative when it states that 'no unnecessary or unreasonable force' shall be employed in making an arrest. A police officer, therefore, who uses excessive force in making an arrest has exceeded the scope of his duties. If it be found that an arresting officer has used excessive force and is thereby injured by an arrestee attempting to defend himself, the officer cannot be considered to have been injured while engaged in the performance of his duties and the assault felony statute is inapplicable. *State v. Mulvihill*, 270 A.2d 277 (N.J., 1970).
>
> There is a reasonable rationale for one rule which requires a citizen to quietly yield to an unlawful arrest and another rule permitting a citizen to use reasonable force to counter the excessive force of an arresting officer. Implicit in the adoption of these two principles is a recognition that liberty can be quickly restored by resort to the legal profession and an acknowledgment that, unless a citizen is afforded the opportunity to protect himself, the restoration of a fractured limb falls within the exclusive province of the medical profession. The abolition of the common-law right to resist an unlawful arrest, therefore, is in no way related to the citizen's right to protect himself from the excessive force of what might be described as an overzealous police officer.

*Id.* Here, as clearly demonstrated by the video exhibits submitted with Plaintiffs' SDF (ECF Doc. 37) and Plaintiff's SSUF (ECF Doc. 38), Mrs. Rodrigues used only the minimal force needed –

indeed, it was clearly insufficient – to keep his grabby, gropy hands away from her body as she tried to figure out why this man had just driven straight at her and chased her across the street after trying to pick a fight with her husband.  SSUF ¶67 ("For most of the twelve (12) seconds depicted in the video *E. Mendes 3*, Mrs. Rodrigues has her arms hanging loose by her sides or grasping the fence for balance as Defendant Dolan swings her around, sometimes only using one hand." (citing *Video E. Mendes 3* 00:01-12.))  Under the analysis provided in *Ramsdell,* there was no probable cause that Mrs. Rodrigues had committed the crime of resisting arrest.

The District of Rhode Island decision cited in Plaintiffs' Memorandum Opposing Summary Judgement, *Petro v. Town of W. Warwick ex rel. Moore*, points out yet another fatal blow to Defendant's effort to portray probable cause:  "Under Rhode Island law, a person cannot resist an arrest unless he or she 'has reasonable ground to believe that he or she is being arrested.'".  ECF Doc. 36-1 at 13.  For the decedent in *Petro*, "there could be no probable cause for resisting arrest because there was no reasonable ground upon which Jackson could have believed the officers were attempting to arrest him."  889 F. Supp. 2d 292, 326-27 (D.R.I. 2012).  Finally, this Court held that the officers were not entitled to qualified immunity because, "[i]n short, no reasonable officer in Kelley's or Lukowicz's position would have believed he or she had 'a particularized and objective basis for suspecting [Jackson] of criminal activity.' " *Id.* at 328.

Here, the same is true.  When Defendant Dolan grabbed Mrs. Rodrigues, she had committed no crime, and there was no reasonable basis for Mrs. Rodrigues to believe that she was being arrested.  Indeed, if no reasonable police officer could believe that he had probable cause to arrest Mrs. Rodrigues for obstructing an officer, as described above, then a jury could also find that it was not reasonable for Defendant Dolan to believe that she was engaged in resisting arrest. Defendant Dolan argues that Mrs. Rodrigues knew that she was resisting and/or obstructing his

attempt to execute a traffic stop. But even in Defendant's version of events, the only thing he ever said to her was to get back into her vehicle. *See* Defendant's Reply Memo (ECF No. 41) at 3 (citing Defendant's SUF (ECF No. 33 ¶20)). He never said a single word to her about a traffic stop before he grabbed her and told her she was being arrested. Certainly, a jury could find that Defendant Dolan had every reason to know that Mrs. Rodrigues was not attempting to resist him but was as bewildered as she was distressed by his erratic and lawless conduct.

### iii.   The Disorderly Conduct Charge Fails to Pass the Smell Test Based On Longstanding Caselaw.

Defendant's final attempt to fabricate probable cause for his arrest of Mrs. Rodrigues is through a preposterous interpretation of Rhode Island's Disorderly Conduct statute. Defendant's Reply Memo (ECF Doc. 41) at 8. Defendant relies on the subsection of Disorderly Conduct that prohibits fighting words. R.I. Gen. Laws § 11-45-1(a)(3). He misapplies *State v. McKenna* by failing to note that criminal defendant McKenna, in her zealous support for her little brother, had yelled out to Woonsocket police that she was going to go in the house, grab a shotgun, and "blow [their] fucking heads off." 415 A.2d 729, 731 (R.I. 1980). McKenna also called the police "cocksuckers." *Id.* Only an incompetent officer, in this case one blinded by unprovoked rage, could think that Mrs. Rodrigues's pleas for Defendant Dolan to explain what was going on or her cries to her husband to call their city councilperson could possibly be considered "fighting words," when much more colorful language forty (40) years previously was not. Indeed, Defendant Dolan's argument does not even attempt to describe what "fighting words" she used, only arguing that "plaintiff screaming to those that were in the vicinity caused a group of males to attempt to intervene." Defendant's Reply Memo (ECF No. 41) at 8. If Defendant cannot even identify what the "fighting words" were, then no reasonable officer could have believed that Mrs. Rodrigues was violating R.I. Gen. Laws § 11-45-1(a)(3).

The possibility of justifying Mrs. Rodrigues's arrest through the Disorderly Conduct charge is reduced to naught with the clarification that she was charged and prosecuted *not under the fighting words subsection,* but under (a)(2), alleging that she "[d]id intentionally, knowingly, and recklessly in a public place, that he or she has no right to occupy disturbed the peace by making loud and unreasonable noise which under the circumstances would disturb a person of average sensibilities." Defendant Dolan does not explain how the sidewalk in front of Payne Park, the fundamental public forum, became a place that Mrs. Rodrigues, a lifelong Pawtucket resident, had "no right to occupy."

Nor can Defendant Dolan overcome the long established law in Rhode Island that this "loud and unreasonable noise" section of the disorderly conduct statute **"constitutionally cannot be applied to speech."** *State v. Tavarozzi*, 446 A.2d 1048, 1052 (1982) (emphasis added).

### B. Mr. Rodrigues's Conduct Was Protected by the First Amendment Under Clearly Established Law.

As to Mr. Rodrigues's First Amendment Retaliation claim, Defendant's only argument in support of qualified immunity is that Defendant and Mr. Rodrigues were just "jawing," so Mr. Rodrigues never petitioned his government and thus, there was no retaliation. See Defendant's Memorandum in Support of His Motion for Summary Judgment (ECF Doc. 32-1) at 16 ("A reasonably well-trained officer would persist in asking an individual their name if consistently refused under the circumstances confronted by Officer Dolan [and] would reasonably believe that their actions were lawful"). Had Defendant Dolan stopped at the obnoxious, but not clearly unconstitutional demands that Mr. Rodrigues identify himself, then Defendant's argument would be relevant. But Defendant Dolan escalated the confrontation; not satisfied with Mr. Rodrigues's submission to the incessant demands for his name, Defendant took his misconduct to a

constitutional level when Mr. Rodrigues announced his intention to petition the government for relief.

In his reply, Defendant finally acknowledges that Mr. Rodrigues announced his intention to file a civilian complaint. Defendant's Reply Memo (ECF Doc. 41) at 8. Defendant cannot deny his immediate reaction to Mr. Rodrigues's declaration; it is loud and clear in the video. Defendant Dolan takes his hand off his gun, raises his fist in the air, and calls out, "I got you bro!" He turns on his heel, stomps off to his car like a child before a temper tantrum, and gets ready to unleash his fury on Mrs. Rodrigues. SSUF ¶¶ 57, 59, 60. Since he cannot disguise his conduct, Defendant Dolan instead claims, citing to no authority at all, that "threatening to file a civilian complaint is not a petition to redress a grievance." Defendant's Reply Memo (ECF Doc. 41) at 8. This unsupported proclamation does not change the fact that Mr. Rodrigues's right to be free from retaliation for his words was clearly established under the law.

First, the distinction between First Amendment claims citing the free speech clause and the right to petition clause is amorphous. The rights of speech and petition "share substantial common ground"; the Supreme Court describes them as "cognate rights." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011) (quoting *Thomas v. Collins*, 323 U.S. 516, 530 (1945)) (citing *Wayte v. United States*, 470 U.S. 598, 610, n. 11). "It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances." *Id.*

Whether evaluated under the right to petition the government clause or the more familiar right to freedom of speech, Mr. Rodrigues's comments were clearly protected under well-established law: "[W]e have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *City of Houston,*

*Tex. v. Hill*, 482 U.S. 451, 465 (1987).  The Court was addressing an unconstitutional statute in *City of Houston*, but its central message is clear:  police cannot arrest people for "words or conduct that annoy or offend them," even when those words do not include any petition to the government.  The Supreme Court has held that the right allows an ordinary citizen to "convey[ ] the special concerns of [the petition's] author to the government," and to "request[ ] action by the government to address those concerns," generally without fear of criminal or civil repercussions.  *Borough of Duryea*, 564 U.S. at 388–89 (citing *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524–25 (2002)).

The Sixth Circuit has stated as much, again conflating the right to petition one's government for redress and other forms of protected speech:

> The freedom of speech likewise protects the right of an ordinary citizen to criticize public officials, again generally without fear of criminal or civil repercussions.. …  Today, countless decisions make clear that "[c]riticism of government is at the very center of the constitutionally protected area of free discussion."  And they make clear that this constitutional protection extends to criticisms of the police.

*Rudd v. City of Norton Shores, Michigan*, 977 F.3d 503, 513–14 (6th Cir. 2020) (citing *See Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998); *Barrett v. Harrington*, 130 F.3d 246, 262 (6th Cir. 1997) (citation omitted); and *City of Houston*, 482 U.S. at 461).

In the Fifth Circuit, civilian complaints against police trigger First Amendment protection under the Right to Petition clause and have done so for decades:

> [Plaintiff's] resort to the police department's citizen complaint process enjoyed First Amendment protection, and summary judgment was inappropriate in the face of the factual question whether the impermissible purpose of retaliating for this protected conduct was a motivating factor in the decision to prosecute.

*Gates v. City of Dallas*, 729 F.2d 343, 345 (5th Cir. 1984) (citing *Wilson v. Thompson,* 593 F.2d 1375, 1387 (5th Cir.1979).  Mr. Rodrigues's announcement of his intention to file a civilian

complaint is protected speech under the First Amendment, and that right was clearly established long before April 2, 2019. A reasonable jury, after viewing Defendant Dolan's response to that announcement, can certainly determine that he should have known such conduct violated Mr. Rodrigues's civil rights.

Moreover, the absence of probable cause for the arrest of Mrs. Rodrigues corroborates Defendant Dolan's own admission that his desire to retaliate against Mr. Rodrigues was the "but-for" reason for the arrest. "Absence of probable cause will generally provide weighty evidence that the officers' animus caused the arrest." *Nieves v. Bartlett*, 58 U.S. 391, 392 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 132 (2012)). Even were the lack of probable cause for this arrest less certain, Mr. Rodrigues would still have a claim. Because a §1983 claim is based on "common-law principles that were well settled at the time of its enactment," courts look to the analogous "false imprisonment" tort that was based on misdemeanor arrests that required a warrant. *Nieves*, 58 U.S. 393 (citing *Kalina v. Fletcher*, 522 U.S. 118 (1997)). Now that States today generally permit police to arrest without a warrant, the Supreme Court carves out an exception "for circumstances where officers have probable cause to make arrests but typically exercise their discretion not to do so. * * * * Thus, the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 58 U.S. 393 (citing *Lozman v. Riviera Beach*, 585 U.S. 87, 97-98 (2018)).

IV.   **CONCLUSION**

The law is clear and has been for decades that, crediting all reasonable inferences to Mr. and Mrs. Rodrigues, a reasonable jury could easily find that Defendant Dolan could not reasonably believe that he had probable cause to arrest Mrs. Rodrigues for any of the asserted charges and

only did so in retaliation for Mr. Rodrigues's protected First Amendment speech. For the reasons set forth in this Memorandum, Plaintiffs respectfully ask this Court to find that Defendant Dolan is not entitled to the defense of qualified immunity, to DENY his Motion for Summary Judgment, and to allow Plaintiffs' claims to be presented to a jury.

        Plaintiffs,
        **EMILY RODRIGUES,**
        **FRANCISCO RODRIGUES**
        By their attorneys,

        /s/ Shannah Kurland
        Shannah Kurland, Esq. (#9186)
        Chloe A. Davis (#9334)
        SINAPI LAW ASSOCIATES, LLC
        2374 Post Road
        Warwick, RI 02886
        Phone: (401) 739-9690
        smk@sinapilaw.com
        cad@sinapilaw.com

## CERTIFICATION

I hereby certify that on September 26, 2025, I filed the within document to the CMECF where it will be available for public viewing and to all counsel for Defendant.

        */s/ Shannah Kurland*