## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| EMILY RODRIGUES; and <br> FRANCISCO RODRIGUES, <br>     Plaintiffs, <br><br> v. <br><br> DANIEL DOLAN, <br>     Defendant. | C.A. No. 22-cv-138-JJM-PAS |

### MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge.

Emily Rodrigues[1] and her husband, Francisco Rodrigues, sued former Pawtucket police officer, Daniel Dolan, for excessive force, assault and battery, false arrest, false imprisonment, malicious prosecution, redress of grievances, and loss of consortium after an altercation outside a convenience store in Pawtucket. ECF No. 1 at 10-14. Officer Dolan now moves for summary judgment on each count. ECF No. 32. After reviewing the record, the Court GRANTS IN PART AND DENIES IN PART Officer Dolan's Motion for Summary Judgment.

## I.    FACTUAL BACKGROUND

On the morning of April 2, 2019, Officer Dolan was in his police cruiser on patrol in the City of Pawtucket. ECF No. 1 at 2; ECF No. 32 at 1. During his shift, Officer Dolan received an email on his cruiser laptop, instructing him to issue Joao

---

[1] At the time of the events giving rise to this action, Ms. Rodrigues was not yet married to Mr. Rodrigues. ECF No. 1 at 3 n.1. Her name was Emily Mendes. *Id.* For simplicity, the Court will refer to her as Ms. Rodrigues.

Gonsalves a trespass order for the Pawtucket Public Library. ECF No. 32 at 1. He retrieved information regarding Mr. Gonsalves's physical description on his laptop and learned that he lived in the area that Officer Dolan was patrolling. *Id.* As Officer Dolan was driving near Payne Park, he observed Mr. Rodrigues—who Officer Dolan believed matched Mr. Gonsalves's physical description—exit a vehicle and enter A&S Convenience Store. *Id.* Ms. Rodrigues, who was with Mr. Rodrigues, stayed in the vehicle. ECF No. 1 at 3. Officer Dolan parked his cruiser behind the vehicle, checked the vehicle's license plate, and learned that its registration was suspended. ECF No. 32 at 1-2. Officer Dolan then exited his cruiser and followed Mr. Rodrigues into the store. *Id.*

Upon entering the store, Officer Dolan encountered Mr. Rodrigues and asked for his name. *Id.* Mr. Rodrigues initially declined and told Officer Dolan to get off him. *Id.* Officer Dolan asked again, while following him around the store. *Id.* The exchange between the two grew increasingly heated, with Mr. Rodrigues stating that he did nothing wrong and Officer Dolan continuing to demand Mr. Rodrigues's name. ECF No. 1 at 3-4. Eventually, Mr. Rodrigues provided his name. ECF No. 1 at 4. Mr. Rodrigues also asked for Officer Dolan's badge number and read it off his uniform. *Id.*

Mr. Rodrigues then left the store, and Officer Dolan followed him. *Id.* The verbal dispute between the two continued outside, with Officer Dolan calling Mr. Rodrigues a "fucking child" and Mr. Rodrigues insisting he would be filing a civil complaint against Officer Dolan. *Id.* As he was returning to his police cruiser, Officer

2

Dolan noticed Ms. Rodrigues drive away from where her vehicle had been parked on West Avenue and turn onto Jefferson Avenue.  ECF No. 32 at 2.  Ms. Rodrigues turned her vehicle around and parked it, so it was facing West Avenue.  *Id.*  Upon seeing this, Officer Dolan exclaimed to Mr. Rodrigues, "I got you bro!"  ECF No. 1 at 4.

Then, Officer Dolan got into his cruiser, activated his overhead lights, and followed Ms. Rodrigues's vehicle onto Jefferson Avenue, a two-lane road.  ECF No. 32 at 2.  Officer Dolan drove and parked his cruiser in the opposite lane of travel, directly in front of Ms. Rodrigues's vehicle.  ECF No. 36 at 18.  Ms. Rodrigues then exited her vehicle, as did Officer Dolan.  ECF No. 32 at 2-3.

It is at this point that the parties' account of events differs.  Officer Dolan claims that he yelled for Ms. Rodrigues to get back into her vehicle because she was being detained for a traffic stop.  *Id.* at 3.  He also alleges that Ms. Rodrigues disregarded his instructions and continued across Jefferson Avenue toward Payne Park.  *Id.*  He claims that Ms. Rodrigues resisted his efforts to handcuff her and to bring her hands behind her back.  *Id.*  All the while, Officer Dolan asserts that Ms. Rodrigues was screaming to those in the vicinity.  ECF No. 41 at 8

Ms. Rodrigues, by contrast, claims that Officer Dolan, without explanation, rushed toward her and started grabbing at her sweatshirt, her breast, and her arm.  ECF No. 1 at 5.  She also states that Officer Dolan swung her around by her arm while he handcuffed her and that it was only after Ms. Rodrigues asked what she was

being arrested for that he answered, "resisting arrest, obstructing, and disorderly conduct." *Id.*

Meanwhile, Mr. Rodrigues observed Officer Dolan grabbing Ms. Rodrigues and ran in their direction, shouting at him to "get off her!" *Id.* Turning to face Mr. Rodrigues, Officer Dolan put his right hand on his taser, waved it at him, and told him to "back off." *Id.* Once Officer Dolan handcuffed Ms. Rodrigues, he placed her in the back of his cruiser and drove her to the police station. ECF No. 1 at 6. She was later charged with disorderly conduct, obstructing a peace officer, and resisting legal or illegal arrest. *Id.* She was also issued a citation for operating a vehicle with a suspended registration. ECF No. 32 at 3.

Ms. Rodrigues was released that same day and given a summons to appear in Rhode Island District Court, though she later moved to transfer the matter to Superior Court. ECF No. 1 at 6. At her hearing, the judge resolved the criminal matter against Ms. Rodrigues when he ordered the matter filed with a plea of Not Guilty. *Id.*

Almost three years after this incident, Mr. and Ms. Rodrigues filed the present Complaint against Officer Dolan, alleging excessive force (Counts One and Two), assault and battery (Counts Three and Four), false arrest and false imprisonment (Counts Five and Seven), malicious prosecution (Counts Eight and Nine), denial of the right to petition for redress of grievances (Count Ten), and loss of consortium

(Count Twelve).[2]   ECF No. 1 at 10-14.   Officer Dolan now moves for summary judgment on all claims.   ECF No. 32 at 1.

## II.    STANDARD OF REVIEW

A motion for summary judgment requires the moving party to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where a reasonable jury could find for the nonmoving party. *Id.*  In ruling on a motion for summary judgment, the Court must review the entire record and consider the facts and inferences in the light most favorable to the nonmoving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).  If the moving party satisfies its burden, then the burden shifts to the nonmoving party to establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993).

---

[2] Mr. and Ms. Rodrigues dismissed their earlier excessive force, false arrest, and false imprisonment claims under the Rhode Island Constitution and their intentional infliction of emotional distress claim (Counts Two, Six, and Eleven).  ECF No. 36 at 1 n.1.

III.    DISCUSSION

A.    Ms. Rodrigues's Claims

1.    Count One: Excessive Force

42 U.S.C. § 1983 provides plaintiffs with an avenue to sue police officers who, while acting under color of law, violate their constitutional or federal statutory rights. *Miller v. Town of Wenham*, 833 F.3d 46, 51 (1st Cir. 2016).  Invoking this statute, Ms. Rodrigues alleges that Officer Dolan violated her Fourth Amendment rights after he employed unnecessary and excessive force to detain and arrest her.  ECF No. 1 at 10.

Here, there is no dispute that Officer Dolan was acting under color of law. However, he contends that his actions were objectively reasonable under the circumstances or, in the alternative, that he is exempted from liability because of the doctrine of qualified immunity.  ECF No. 32 at 9, 13.  Both arguments are addressed in turn.

a.    Reasonableness

The right of a police officer to detain or arrest an individual "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  However, the Fourth Amendment's protections are implicated when the officer exerts an unreasonable level of force during the seizure. *Raiche v. Pietroski*, 623 F.3d 30, 36 (1st Cir. 2010) (citing *Graham*, 490 U.S. at 394-95).  The pertinent question in excessive force cases is whether the force used "was consistent with the amount of force that a reasonable police officer would think necessary to bring the arrestee into custody." *Gaudreault*

6

*v. Mun. of Salem*, 923 F.2d 203, 205 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Graham*, 490 U.S. at 396 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). However, in making this determination, courts pay careful attention to the circumstances of each case, including "the severity of the crime, whether the suspect posed an immediate threat to the safety of the officers or others, and whether [they were] actively resisting arrest or attempting to evade arrest by flight." *Gaudreault*, 923 F.2d at 205 (citing *Graham*, 490 U.S. 386, 396 (1989)).

There is a genuine dispute of material fact as to whether Officer Dolan used excessive force. Officer Dolan argues that his use of force was objectively reasonable when he arrested Ms. Rodrigues because he claims that she was fleeing from a traffic stop and that he only exerted that amount of force that was necessary to stop her from escaping. ECF No. 32 at 9. Ms. Rodrigues paints a different picture, asserting that Officer Dolan rushed over to her after his verbal altercation with Mr. Rodrigues and started shoving her against a fence, yanking at her sweatshirt, and grabbing at her breast. ECF No. 1 at 5; ECF No. 36 at 18. She claims that she was not preventing Officer Dolan from handcuffing her but merely trying to protect herself in response to a sudden assault. ECF No. 1 at 5; ECF No. 36 at 18-19.

The *Graham* factors used to assess reasonableness also point in opposite directions. The first factor cuts against Officer Dolan considering that the offense for which Ms. Rodrigues was stopped amounted to no more than a suspended

registration violation.  ECF No. 32 at 9.  Officer Dolan himself noted in his deposition testimony that he initially was not going to do anything about the violation but only chose to tow the vehicle because of Mr. Rodrigues's "immature behavior."  ECF No. 37, Ex. A at 26; ECF No. 36 at 12.  To be sure, Ms. Rodrigues did not submit to Officer Dolan's orders to return to her vehicle and to place her hands behind her back.  However, when all was said and done, the crimes for which Ms. Rodrigues was charged amounted to minor offenses[3] that were ultimately resolved when a judge ordered the matter filed with a plea of Not Guilty.  ECF No. 1 at 6; *see Turkowitz v. Town of Provincetown*, 914 F. Supp. 2d 62, 72 (D. Mass. 2012) (finding that first *Graham* factor weighed in plaintiff's favor because "disorderly conduct is hardly a severe crime").

The second factor also tends to weigh in Ms. Rodrigues's favor: no facts suggest that she posed an immediate threat to Officer Dolan's safety or the safety of anyone else in the community while Officer Dolan attempted to handcuff her.  ECF No. 36 at 18; *see Turkowitz*, 914 F. Supp. at 72 (finding that second *Graham* factor weighed in plaintiff's favor, despite the "wiggling" of his arms to avoid being handcuffed, because plaintiff was unarmed and made no threatening gestures).  The third *Graham* factor, however, favors Officer Dolan because, as described *supra*, he likely

---

[3] Under Rhode Island law, obstruction of a police officer and resisting arrest are both misdemeanors that are punishable by up to one year in prison, a $500 fine, or both.  Disorderly conduct is also a misdemeanor punishable by up to six months in prison, a $500 fine, or both.

had probable cause to arrest Ms. Rodrigues for resisting arrest and obstruction of a police officer.  *See* Section III.A.3; Section III.A.4.b.

Viewed in the light most favorable to Ms. Rodrigues, the *Graham* factors tend to weigh in her favor.  A jury could reasonably infer that Officer Dolan's use of force was unreasonable and disproportionate to the circumstances surrounding Ms. Rodrigues's arrest.  As such, the Court concludes that genuine issues of material fact remain as to whether Officer Dolan used excessive force.

### b.    Qualified immunity

However, this is not the end of the matter.  Officer Dolan raises the defense of qualified immunity and argues that his conduct during his altercation with Ms. Rodrigues did not violate "clearly established" rights.  ECF No. 32 at 13.

Qualified immunity shields a government official from civil liability for actions taken under color of state law.  *Gray v. Cummings*, 917 F.3d 1, 9 (1st Cir. 2019) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "This protection attaches 'to all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  A police officer may claim this defense "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). A right is "clearly established" if its contours are "sufficiently clear that every 'reasonable official would have understood that what he is doing violates that right.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

There is a two-step analysis that courts must engage in when charged with resolving questions of qualified immunity at the summary judgment stage. *Kurland v. City of Providence*, 711 F. Supp. 3d 57, 80 (D.R.I. 2024) (citing *Tolan v. Cotton*, 572 U.S. 650, 655 (2014)). "First, the court asks whether the facts 'taken in the light most favorable to the party asserting the injury ... show the officer's conduct violated a federal right.'" *Id.* (citing *Tolan*, 572 U.S. at 655). If the facts make out a violation of a federal right, then the court moves to the second step, which is asking "whether the right in question was clearly established at the time of the violation." *Id.* (quoting *Tolan*, 572 U.S. at 655).

As the above analysis demonstrates, Ms. Rodrigues satisfies the first step of the inquiry because—when all the facts are construed in her favor—she has sufficiently shown a constitutional violation of her right to be free from unnecessary and excessive force. *See* Section III.A.1.a. Moving to the second step, the court considers whether this right was "clearly established." Here, as numerous courts have noted, there is "little doubt that the right to be free from excessive force is encompassed within Fourth Amendment protections." *Turkowitz*, 914 F. Supp. 2d at 73; *see also Blake v. City of Providence*, No. 21-154-JJM-PAS, 2024 WL 3362988, at *3 (D.R.I. July 8, 2024) ("It goes without saying that the Fourth Amendment guarantees the right to be free from excessive force."); *Howe v. Town of N. Andover*, 854 F. Supp. 2d 131, 143 (D. Mass. 2012) (same). Likewise, "'[p]olice officers need not be reminded that the Fourth Amendment prohibits them from' engaging in excessive force." *Blake*, 2024 WL 3362988, at *3 (quoting *Howe*, 854 F. Supp. at 143).

Because there exist genuine issues of material fact regarding Officer Dolan's use of excessive force, the qualified immunity defense fails.  Accordingly, the Court DENIES summary judgment as to the excessive force claim.

### 2.    Counts Three and Four: Assault and Battery

In Counts Three and Four of the Complaint, Ms. Rodrigues sues Officer Dolan for assault and battery.  ECF No. 1 at 11.  As with the excessive force claim, Officer Dolan also claims that he is shielded from liability for assault and battery due to the doctrine of qualified immunity.  ECF No. 32 at 12.

As noted by the First Circuit, the standard for determining whether force is reasonable for an assault and battery claim is "essentially the same" as the standard for determining whether it is reasonable for excessive force claims.  *Dean v. City of Worcester*, 924 F.2d 364, 369 (1st Cir. 1991).  Therefore, "[w]here a plaintiff alleges both a § 1983 excessive force claim and common law claims for assault and battery, [the] determination of the reasonableness of the force used under § 1983 controls [the] determination of the reasonableness of the force used under the common law assault and battery claims."  *Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010).  It therefore follows that where "Defendants are entitled to qualified immunity on [an] excessive force claim, they are also entitled to immunity from suit on the state law assault and battery claims."  *Mucci v. Town of North Providence ex rel. Vallee*, 815 F. Supp. 2d 541, 548 n.5 (D.R.I. 2011).

Like her excessive force claim, there are genuine issues of material fact remaining as to whether Office Dolan assaulted and battered Ms. Rodrigues.  *See*

Section III.A.1.a. Similarly, because quality immunity does not shield Officer Dolan from being sued on the excessive force claim, it also cannot shield him from liability on the assault and battery claims. *Mucci*, 815 F. Supp. at 548 n.5.

Accordingly, the Court DENIES summary judgment as to the assault and battery claims.

### 3.    Counts Five and Seven: False Arrest and False Imprisonment

In Counts Five and Seven of the Complaint, Ms. Rodrigues makes additional claims under § 1983 for false arrest and false imprisonment, as well as a claim for false imprisonment under Rhode Island law. ECF No. 1 at 11-12. These claims will be treated together because, as the First Circuit has indicated, claims under § 1983 for false arrest are a "subset" of claims under § 1983 for false imprisonment. *Peña-Borrero v. Estremeda*, 365 F.3d 7, 12 n.8 (1st Cir. 2004). Additionally, § 1983 false imprisonment claims often go together with common-law false imprisonment claims. *See, e.g.*, *Dyson v. City of Pawtucket*, 670 A.2d 233, 238-39 (R.I. 1996); *Henshaw v. Doherty*, 881 A.2d 909, 919 (R.I. 2005).

To prevail on these types of claims, a plaintiff must assert that the police lacked probable cause to believe that a plaintiff committed a crime. *Holder v. Town of Sandown*, 585 F.3d 500, 504 (1st Cir. 2009). So long as probable cause "exist[ed] as to *any* offense that *could* be charged under the circumstances," the claim must fail. *LaFrenier v. Kinirey*, 478 F. Supp. 2d 126, 136 (D. Mass. 2007) (quoting *United States v. Bizier*, 111 F.3d 214, 218 (1st Cir. 1997)). This means that if Officer Dolan had probable cause to arrest Ms. Rodrigues on any one of the three charges brought

against her (i.e., resisting arrest, obstruction, and disorderly conduct), then her false arrest and false imprisonment claims stemming from those charges cannot proceed.

Probable cause to arrest exists where, at the time of the arrest, the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Holder v. Town of Sandown*, 585 F.3d 500, 504 (1st Cir. 2009) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). The inquiry into probable cause to support an arrest "is not necessarily based upon the offense actually invoked by the arresting officer but upon whether the facts known at the time of the arrest objectively provided probable cause to arrest." *United States v. Jones*, 432 F.3d 34, 41 (1st Cir. 2005) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). Even a very minor criminal offense in a police officer's presence may provide the basis for the arrest of the offender without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Officer Dolan argues that he had probable cause to believe Ms. Rodrigues was resisting arrest.[4]   ECF No. 41 at 3, 5. The Rhode Island statute that criminalizes resisting arrest prohibits "any person [from using] force or any weapon in resisting a legal or an illegal arrest by a peace officer, if the person has reasonable ground to

---

[4] Officer Dolan also asserts that he had probable cause to arrest Ms. Rodrigues for "Obstructing an Officer in Execution of Duty" and "Disorderly Conduct." ECF No. 32 at 11; ECF No. 41 at 7-8. The Court addresses those arguments in the malicious prosecution section of this order. *See* Section III.A.4.b.

believe that he or she is being arrested and that the arrest is being made by a peace officer." R.I. Gen. Laws § 12-7-10(a). Even a defendant's resistance to an initial unlawful arrest provides probable cause for a second, lawful arrest for resisting the initial, unlawful arrest. *Petro*, 889 F. Supp. at 327 (citing *United States v. Camacho*, 661 F.3d 718, 730 (1st Cir. 2011)).

It is undisputed that Officer Dolan witnessed Ms. Rodrigues operate a vehicle with a suspended registration. ECF No. 32 at 3. This provided the basis for him to stop her vehicle. *Atwater*, 532 U.S. at 354. In response to seeing him drive toward her with his overhead lights activated, Ms. Rodrigues exited her vehicle and started crossing the street. ECF No. 1 at 5. It was objectively reasonable for an officer in Officer Dolan's position to believe that, in that moment, Ms. Rodrigues was resisting arrest by attempting to escape. She also failed to comply with his subsequent order to return to her vehicle. ECF No. 32 at 3. Though there is some disagreement over whether Ms. Rodrigues heard Officer Dolan state that she was being detained for a traffic stop, there is no question that she had reasonable grounds to believe that she was being arrested—whether that arrest was illegal or not—once Officer Dolan instructed her to put her hands behind her back and told her that she was under arrest. ECF No. 1 at 5. Nor is there any dispute that Ms. Rodrigues, whether justified or not, physically resisted Officer Dolan's efforts to restrain her. *Id.*

The Court finds that Officer Dolan had probable cause to arrest Ms. Rodrigues for resisting arrest because she got out of her vehicle and failed to comply with his order to return to the vehicle even after he turned on his overhead lights. Even if

14

this arrest were not legal, the Court finds that Officer Dolan nevertheless had probable cause to arrest Ms. Rodrigues once she physically resisted his efforts to put her hands behind her back and handcuff her.

Accordingly, the Court GRANTS summary judgment as to the false arrest and false imprisonment claims.

### 4.    Counts Eight and Nine: Malicious Prosecution

Ms. Rodrigues also alleges a malicious prosecution claim under § 1983 and under Rhode Island law.  ECF No. 1 at 12-13.  The elements of a constitutional and common-law malicious prosecution claim are similar but not identical.  *Kurland*, 711 F. Supp. at 74.

### a.    Malicious Prosecution Under Section 1983

Starting first with the constitutional claim, the right to be free from malicious prosecution stems from the Fourth Amendment's protection against unreasonable searches and seizures.  *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 99-100 (1st Cir. 2013)).  To succeed on this type of claim, a plaintiff must, among other things, "show a deprivation of liberty, pursuant to legal process, that is consistent with the concept of a Fourth Amendment seizure."  *Harrington v. City of Nashua*, 610 F.3d 24, 30 (1st Cir. 2010).  Typically, the requisite legal process "comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would constitute the seizure)."  *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001).

Here, there is no question that Ms. Rodrigues was arrested without a warrant. As such, her arrest came before the issuance of any legal process, and that arrest "cannot be part of the Fourth Amendment seizure upon which [she] base[s] [her] section 1983 claims." *Id.*; *see also Meehan v. Town of Plymouth*, 241 F.3d 46, 89-90 (1st Cir. 1999). This leaves her "with the task of showing some *post-arraignment* deprivation of liberty, caused by the application of legal process, that approximates a Fourth Amendment seizure." *Nieves*, 241 F.3d at 53.

As relevant here, a post-arraignment deprivation of liberty can occur through a plaintiff's "continued, unreasonable pretrial detention." *Hernandez-Cuevas*, 723 F.3d at 100. The Supreme Court has also recently held that where a person is detained on two charges, one that is supported by probable cause (a valid charge) and one that is not (an invalid charge), a constitutional violation occurs for malicious prosecution purposes where the invalid charge "unreasonably extend[s] the pretrial detention." *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 563 (2024). That is, "a detention [that] is justified at the outset … may become unreasonably prolonged" if the valid charge is dropped and the invalid charge causes the detention to continue. *Id.*

Thus, Ms. Rodrigues's claim hinges on the reasonableness of her pretrial detention. Two First Circuit cases help in making this determination. In *Nieves*, the court found that two plaintiffs who were arrested without a warrant, detained for about two hours, and then released the same day on "relatively benign" pretrial conditions were not deprived of their Fourth Amendment rights. 241 F.3d at 57.

Similarly, in *Harrington*, the court held that the plaintiff could not make out her Fourth Amendment malicious prosecution claim where police officers arrested her without a warrant, held her for about four and a half hours, and then released her on personal recognizance with standard pretrial conditions. 610 F.3d at 32-33.

Ms. Rodrigues's case is akin to *Nieves* and *Harrington*. Following her arrest, Officer Dolan brought Ms. Rodrigues to the Pawtucket police station where she was processed, held for a few hours,[5] and then released the same day on personal recognizance. ECF No. 1 at 6. Nor is there any mention in the evidence of Ms. Rodrigues being subjected to any restrictive pretrial conditions.[6] Even if she was held on both a valid charge (i.e., resisting arrest) and an invalid charge (i.e., disorderly conduct[7]), no evidence suggests that the invalid charge unreasonably prolonged her detention in any way. *Chiaverini*, 602 U.S. at 563. Without more, this

---

[5] None of the parties have stated approximately how many hours the Pawtucket Police Department held Ms. Rodrigues. Officer Dolan claims that she was "released within hours on all three charges." ECF No. 41 at 7. Ms. Rodrigues concedes that she was released "that [same] night." ECF No. 1 at 6. Finally, Mr. Rodrigues, when asked at his deposition how long Ms. Rodrigues had been held, answered "a few hours." ECF No. 37, Ex. F at 56. The Court is satisfied in concluding that she was held only for "a few hours."

[6] A few courts have recognized that restrictive pretrial conditions may constitute a seizure for Fourth Amendment malicious prosecution purposes. *See, e.g.*, *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) (finding that restrictions on plaintiff's post-indictment liberty, including requirements that he post $10,000 bond, attend all court hearings, contact pretrial services weekly, and refrain from traveling outside New Jersey and Pennsylvania amounted to a seizure); *Murphy v. Lynn*, 118 F.3d 938, 945 (2d Cir. 1997) (finding that plaintiff was seized under Fourth Amendment where he was obligated to attend court appointments and prohibited from leaving New York). However, pretrial conditions are not at issue here.

[7] The Court need not determine here whether this charge was supported by probable cause or not.

short period of detainment does not rise to the level of a constitutional violation. *Nieves*, 241 F.3d at 57; *Harrington*, 610 F.3d at 32-33.

Accordingly, the Court GRANTS summary judgment as to the § 1983 malicious prosecution claim.

### b.    Malicious Prosecution Under Rhode Island Law

Under Rhode Island law, a plaintiff can establish malicious prosecution "if she can show that the defendants '(1) initiated a criminal proceeding against [her]; (2) with malice; (3) and without probable cause; which (4) terminated in plaintiff's favor.'" *Kurland*, 711 F. Supp. at 74 (quoting *Solitro v. Moffatt*, 523 A.2d 858, 861-62 (R.I. 1987)).  The plaintiff must also "establish the elements of malice and lack of probable cause by 'clear proof.'"  *Id.* (quoting *Powers v. Carvalho*, 368 A.2d 1242, 1246 (R.I. 1977)).  However, where probable cause exists to arrest a plaintiff, their malicious prosecution must fail.  *Horton v. Portsmouth Police Dep't*, 22 A.3d 1115, 1123 (R.I. 2011).

Here, the Court already determined that probable cause existed to arrest Ms. Rodrigues for resisting arrest, which means that her malicious prosecution for that specific offense cannot proceed.  *See* Section III.A.3; *Horton*, 22 A.3d at 1123.  The Court will now analyze Ms. Rodrigues's remaining malicious prosecution claims as they relate to her obstruction and disorderly conduct charges.

### i.    Obstruction of a Police Officer

Under Rhode Island law, the elements of obstructing a police officer are: "(1) that the defendant acted knowingly, (2) that the defendant 'resisted' or 'obstructed' a

police officer, (3) that the defendant knew the police officer was in fact a police officer, and (4) that the police officer was performing an authorized act within his official capacity." *State v. Duffy*, 441 A.2d 524, 524 (R.I. 1982) (citing R.I. Gen. Laws § 11-32-1). A person "resists" or "obstructs" a police officer where they fail to submit to a lawful order from the police officer. *Id.* (citing *State v. Ramsdell*, 285 A.2d 399 (1971)). If Officer Dolan had probable cause to arrest Ms. Rodrigues for obstruction, then her malicious prosecution claim arising from that charge cannot proceed.

Ms. Rodrigues argues that she could not have committed the offense of obstructing Officer Dolan because he was not lawfully and legitimately executing his duties as a police officer. ECF No. 36 at 9, 11. This argument is unpersuasive. As discussed above, Officer Dolan was well within his rights to initiate a traffic stop of Ms. Rodrigues's vehicle after he observed her drive with a suspended registration. *Atwater*, 532 U.S. at 354. Additionally, Officer Dolan had the authority to order Ms. Rodrigues back into her vehicle. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("[A] traffic stop of a car communicates to a reasonable passenger that he or she is not free to terminate the encounter with the police and move about at will.").

This means that when Ms. Rodrigues crossed the street and failed to return to her vehicle, she was arguably "resisting" or "obstructing" Officer Dolan's lawful order. *Id.* at 333. This was sufficient for Officer Dolan to develop the probable cause necessary to arrest her for obstruction. *Duffy*, 441 A.2d at 524. Because there was probable cause as to this charge, this claim cannot go forward.

Accordingly, the Court GRANTS summary judgment as to the state law malicious prosecution claim arising from the obstruction charge.

ii.     **Disorderly Conduct**

Moving to the disorderly conduct claim, an individual violates the Rhode Island statute that criminalizes this behavior if they:

> [I]ntentionally, knowingly, or recklessly: (1) [e]ngage[] in fighting or threatening, or in violent or tumultuous behavior; (2) [i]n a public place ... disturbs another person by making loud and unreasonable noise which under the circumstances would disturb a person of average sensibilities; (3) [d]irects at another person in a public place offensive words which are likely to provoke a violent reaction on the part of the average person so addressed; (4) [a]lone or with others, obstructs a ... street, [or] sidewalk ....

*Costa v. Rasch*, No. 11-336L, 2014 WL 12803016, at *8 n.20 (D.R.I. July 29, 2014) (quoting R.I. Gen. Laws § 11-45-1).

For the purposes of Ms. Rodrigues's malicious prosecution claim, in considering whether Officer Dolan "initiated" a criminal proceeding under Rhode Island law, the Court must consider whether "the state Attorney General's office was free of pressure or influence exerted by the police officers or knowing misstatements made by the officers." *Kurland*, 711 F. Supp. at 75 (quoting *Senra v. Cunningham*, 9 F.3d 168, 174 (1st Cir. 1993)). Where officers "have lied about the events in question and communicates that false information to prosecutors, the officers have initiated the criminal proceedings." *Id.* (citing *Senra*, 9 F.3d at 174).

Here, Officer Dolan argues that his disorderly conduct arrest was justified because Ms. Rodrigues's "screaming to those that were in the vicinity caused a group of males to attempt to intervene with [his] efforts to arrest [her]." ECF No. 41 at 8.

20

As a result, Officer Dolan claims that he had to "draw his taser and instruct the individuals to back away." *Id.* By contrast, Ms. Rodrigues claims that Officer Dolan's narrative report recounting the events is "full of falsehoods and directly contradicts video evidence of the encounter taken by a witness on scene." ECF No. 1 at 7.

After reviewing the video in question, the Court finds it unclear which falsehoods Ms. Rodriguez purports to identify. From a purely objective standpoint, Ms. Rodrigues did scream, a group of males did rush over to her, and Officer Dolan did draw his taser while instructing the men to back away. Whether these circumstances amounted to disorderly conduct is not for this Court to decide—indeed, the state court already determined they did not. *See* ECF No. 1 at 2 (noting that state court resolved charges in Ms. Rodrigues's favor). There has been no other evidence presented to show that Officer Dolan lied about his version of events, let alone that he conveyed this allegedly false information or attempted to otherwise influence the Rhode Island Attorney General's Office to bring charges against Ms. Rodrigues. As such, Officer Dolan cannot be said to have "initiated" criminal proceedings against Ms. Rodrigues.

Accordingly, the Court GRANTS summary judgment as to the state law malicious prosecution claim stemming from the disorderly conduct charge.

### B.    Mr. Rodrigues's Claims

#### 1.    Count Ten: Redress of Grievances

In Count Ten of the Complaint, Mr. Rodrigues alleges that Officer Dolan violated his right to petition the government for redress of grievances. ECF No. 1

at 13.  The Petition Clause of the First Amendment "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes."  *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011).  The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives.  *Id.* at 388.  In addition, "the right to petition is generally concerned with expression directed to the government seeking redress of a grievance."  *Id.*  To succeed on this claim, a plaintiff must show that their conduct was constitutionally protected and that this conduct was a substantial factor or a motivating factor driving the allegedly retaliatory conduct.  *Gorelik v. Costin*, 605 F.3d 118, 123 (1st Cir. 2010).

Mr. Rodrigues asserts that his First Amendment rights were violated when he told Officer Dolan that he was going to file a civilian complaint against him and, in response, Officer Dolan retaliated against him by pulling Ms. Rodrigues over.  ECF No. 36 at 6.  Officer Dolan claims that Mr. Rodrigues failed to offer facts that demonstrate how this interaction constituted a petition to his government to redress a grievance.  ECF No. 32 at 8.

After reviewing the Complaint and record evidence, the Court agrees with Officer Dolan.  Mr. Rodrigues has not offered any facts that support how his exchange with Officer Dolan violated his right to petition the government; his briefing merely expects the jury to infer such a violation.  ECF No. 36 at 6.  Had Mr. Rodrigues filed a complaint against Officer Dolan, such conduct would have likely been protected.  *See Johnson v. Warden, FCI Berlin*, No. 25-cv-231-SM-TSM, 2025 WL 2421867, at *5

(D.N.H. Aug. 1, 2025) (stating that plaintiff-prisoner exercised his First Amendment right to petition government for redress of grievances by filing administrative complaints against prison officials). However, threatening to file a complaint is not constitutionally protected conduct. Even if the filing of this lawsuit constitutes protected conduct, it was not initiated until nearly three years *after* Officer Dolan arrested Ms. Rodrigues. ECF No. 1. Officer Dolan's conduct can hardly be considered retaliatory when the Complaint was filed years after the fact.

Accordingly, because Mr. Rodrigues has failed to show that his conduct was constitutionally protected, the Court GRANTS Officer Dolan's summary judgment motion as to the First Amendment claim.

## 2.    Count Twelve: Loss of Consortium

Mr. Rodrigues has also brought a loss of consortium claim. ECF No. 1 at 14. A married person is entitled to recover damages for loss of consortium caused by tortious injury to his or her spouse. *See* R.I. Gen. Laws § 9-1-41. Courts that have ruled on the issue have held that "nonmarried cohabitational partners cannot recover for loss of consortium, regardless of the nature and significance of their relationship to the victim." Alisha M. Carlile, Note, *Like Family: Rights of Nonmarried Cohabitational Partners in Loss of Consortium Actions*, 46 B.C. L. Rev. 391, 400 (2005) (citing cases from Alaska, California, and Massachusetts).

As Mr. Rodrigues acknowledged, he was not married to Ms. Rodrigues at the time of the events giving rise to this lawsuit. ECF No. 1 at 3 n.1. They married five

days later. *Id.* Mr. Rodrigues cannot recover damages for loss of consortium, and the Court GRANTS summary judgment as to this claim.

## IV. CONCLUSION

For all these reasons, the Court GRANTS IN PART AND DENIES IN PART Officer Dolan's Motion for Summary Judgment as follows: Counts Five, Seven, Eight, Nine, Ten, and Twelve are dismissed; Counts One, Three, and Four survive. ECF No. 32.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

October 21, 2025