**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **EMILY RODRIGUES,** *Plaintiff* | : | |
| | : | |
| **v.** | : | **C.A. No. 22-cv-138-JJM-PAS** |
| | : | |
| **DANIEL DOLAN, alias,** *Defendant* | : | |

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL**

Now comes Plaintiff Emily Rodrigues and objects to Defendant Daniel Dolan's deferred Motion for Judgment as a Matter of Law under F.R.Civ.P. 50(a), his Renewed Motion under Rule 50(b), and his Motion for a New Trial under F.R.Civ.P. 59.

## I. INTRODUCTION

Defendant's Motion for Judgment as a Matter of Law rests entirely on his assertion of Qualified Immunity and must fail because he has not provided a proper record on which any ruling on his motion could rely, and relies on facts that, while disputed before trial, are inconsistent with the jury's verdict and must be presumed to have been resolved in Plaintiff's favor, not his, and thus cannot be relied upon now after the verdict. Further, because this Court disposed of the qualified immunity defense in its Memorandum and Order denying summary judgment on Mrs. Rodrigues's excessive force claim, Defendant's Rule 50 Motion must fail again under law of the case doctrine, as well as under clearly established law.

As to the Motion for a New Trial under Rule 59, Mr. Dolan argues that "the verdict is against the clear weight of the evidence," Dft. Mem. ECF Doc. 72-1 at 6, but fails to provide any record cite of the evidence that supposedly weighed against the jury's verdict, clearly or otherwise.

Defendant also claims that despite this jury's deliberative process, their decision to award Mrs. Rodrigues $360,000 is "grossly excessive, inordinate, [and should be] shocking to the conscience of the Court, or [is] so high that it would be a denial of justice to permit it to stand." *Id.* at 14 (citing *Franceschi v. Hosp. Gen. San Carlos Inc.*, 420 F.3d 1, 4 (1st Cir. 2005) (internal citations omitted)). To support his position, Defendant cites two dissimilar employment cases from 1994 and 2012 where the First Circuit found lower awards appropriate, ignores many cases wherein the First Circuit found emotional distress awards comparable to this one to be reasonable and unheld them, and on this basis attempts to discount Mrs. Rodrigues's powerful and deeply personal testimony and the jury's reasonable valuation of her damages.

Defendant's third and final ground for his new trial Motion simply recycles the arguments used in his Motion in Limine to exclude evidence, (ECF Doc. #52 *et seq.*), granted in part by the Court. (ECF Doc. #60). It is not clear if Mr. Dolan argues here against the inclusion of *any* of Plaintiff's proffered pattern, intent, and/or motive evidence as violative of F.R.E. 403 and 404, or if his concern is that Plaintiff did not introduce "pleadings, judicial findings, or other submissions" related to the incidents that Defendant deemed favorable to him, but that Plaintiff did not introduce. If the latter, then Plaintiff notes that this Court limited her introduction of such materials on Defendant's objection and that it was Defendant's obligation to admit evidence which he deemed favorable to him during cross-examination or his case-in-chief. Accordingly, any such objection must be considered waived and therefore cannot be raised now, and any resulting prejudice is of Defendant's own making.

Plaintiff appreciates the mandate that counsel zealously represent their client's interests after trial as before and therefore refrains from characterizing Defendant's Motion as "frivolous."

His arguments, however, are specious and may be easily addressed by the Court by denying this Motion.

## II. STANDARD

As to Defendant's Motion for Judgment as a Matter of Law, the First Circuit has written that "[t]he standard for granting a Rule 50 motion is stringent. 'Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party.' " *Malone v. Lockheed Martin Corp.*, 610 F.3d 16, 20 (1st Cir. 2010) (quoting *Rivera Castillo v. Autokirey, Inc.*, 379 F.3d 4, 9 (1st Cir. 2004) (quoting *Keisling v. SER-Jobs for Progress, Inc.*, 19 F.3d 755, 759-60 (1st Cir. 1994))). Moreover, " 'all of the evidence and reasonable inferences drawn from the evidence are…considered in the light most favorable to' the non-moving party." *Id.*

Under Rule 59, the Court may grant a motion for a new trial " 'only if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice.' " *Crowe v. Marchand*, 506 F.3d 13, 19 (1st Cir. 2007) (quoting *Casillas-Diaz v. Palau*, 463 F.3d 77, 81 (1st Cir. 2006)). This standard provides no respite, for "[a] party seeking recourse under either rule faces an uphill battle." *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 565 (1st Cir. 2003). Either way, Defendant is asking this Court to "determine whether there are facts and inferences reasonably drawn from those facts which lead to but one conclusion - - that there is a total failure of evidence to prove plaintiff's case." *Id.* (quoting *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir. 1989) (quoting *Mayo v. Schooner Capital Corp.*, 825 F.2d 566, 568 (1st Cir. 1987))). On July 23, 2026 at approximately 6:15 p.m., the seven members of the jury entrusted to hear this controversy determined, after earnest deliberation, that the facts firmly and powerfully

proved Plaintiff's case. Plaintiff now prays that the Court will be equally just and correct as it applies the law.

## III. ARGUMENT

### A. Defendant's Combined Motion Should Be Denied Because He Did Not Provide a Transcript or Any Citations to the Record Upon Which to Base His Motion.

Before presenting her arguments on the merits, Plaintiff points out that Defendant did not provide a transcript of any portion of the trial, and makes not even the most cursory reference to any transcript or other record of the trial that he seeks to overturn, and thus his motion should be denied. Indeed, it appears that Defendant's entire combined Motion rests upon only his attorney's own recollection[1] of the testimony, other evidence, objections, and argument that came before the jury and asks this Court to simply take his word for it, or to rely on its own recollection.

While the text of the relevant Federal Rules of Civil Procedure does not address the question of citation to the record, "[g]enerally speaking, specific reliance upon the trial transcript is necessary to demonstrate one's entitlement to relief on a Rule 59 motion based upon determinations made at trial." *Carlton v. Pearson*, 384 F. Supp. 3d 382, 386 (providing a lengthy string cite of cases explaining that such motions are effectively impossible for a court to address in the absence of a record and citations thereto).

This failure to provide a transcript or specific citations to the portions of the proceeding on which Defendant's motions are based is alone sufficient grounds for denying both motions.

[1] "It is not sufficient for counsel to present [a motion for new trial] relying entirely on counsel's recollections from the trial record; such recollections and characterizations are often mistaken about the precise content of the testimony, skewed, conflated with statements made by witnesses outside of trial, or otherwise unreliable in a host of ways. Moreover, the failure to supply a transcript prevents a party from specifically citing the Court to the particular location in the record where the evidence may be found; general references to 'witnesses testified that . . .' or even 'witness X testified that . . .' require the Court to canvass the record and speculate about which particular statements by a witness the party is relying upon. This improperly requires the Court to adopt the role of advocate." *Martinez v. Valdez*, 125 F. Supp. 3d 1190, 1196-97 (D. Colo. 2015).

*Palmer v. Robbins*, No. 4:19-cv-167, 2022 U.S. Dist. LEXIS 140656, at *4 (S.D. Ga. Aug. 8, 2022) ("Plaintiff's counsel's recollection of the trial record alone is insufficient to support Plaintiff's Motion for New Trial, since it argues that there was insufficient evidence to support the jury's verdict."); *Smiley v. Gary Crossley Ford, Inc.*, No. 14-00201-CV-W-SWH, 2016 U.S. Dist. LEXIS 54664, at *3 (W.D. Mo. Apr. 25, 2016) (noting that "the failure to file a transcript was a sufficient basis to deny a motion for new trial" but still ruling on the merits of portions of the motion where "[t]he trial, however, was recorded and the Court has access to those audio recordings. Where a matter is sufficiently concrete and does not require the Court to play hours of recording searching for the relevant information, the Court has done so and it has been noted below."). "In short, the lack of a transcript 'significantly hinder[s]' the Court's consideration of Plaintiff's Motion for New Trial." *Palmer*, 2022 U.S. Dist. LEXIS 140656, at *5 (quoting *Sellner v. MAT Indus.*, LLC, No. 13-1289 ADM/LIB, 2018 U.S. Dist. LEXIS 171795, (D. Minn. Oct. 4, 2018)). "Given the factual nature of [moving party's] Motion and the specifics of this case, the Court simply cannot grant [moving party] the relief he seeks without a thorough review of the trial transcript." *Id.* Accordingly, Defendant's motions should be denied on this basis alone.

**B. It was Clearly Established that Under the Facts Construed as Favorable to the Verdict, the Force Used by Defendant Dolan Against Mrs. Rodrigues Was Excessive.**

Defendant's post-trial motion practice cannot alter the simple reality that the jury believed the Plaintiff over the Defendant as to the facts that were material to their determination that Mr. Dolan used excessive force and committed assault and battery upon Mrs. Rodrigues. As this Court already determined in its Memorandum and Order denying summary judgment on the excessive force claim, "M[r]s. Rodrigues satisfies the first step of the [qualified immunity] inquiry because – when all the facts are construed in her favor – she has sufficiently shown a constitutional violation of her right to be free from unnecessary and excessive force." ECF Doc. 34 at 10.

Defendant is wrong that "there was no dispute in the evidence at trial concerning what happened for the purposes of the qualified immunity analysis." Def's. Mem. ECF Doc. 72-1 at 3. Rather, he states the facts as he would like them to be and disagrees with the cold, hard truth that the jury decided the disputed facts in Mrs. Rodrigues's favor. Free from any limitations required by citing to the record, Defendant appears to invent resolutions to factual disputes that in real life were consistent with the verdict. For example,

- According to Mrs. Rodrigues's testimony, there was no "pulling up to [her] vehicle to conduct the traffic stop" (ECF Doc. 72-1 at 3); rather, Defendant drove straight toward her at a high rate of speed (uncontradicted by Mr. Dolan, who did not know how fast he was driving) and gave no indication that this was merely a traffic stop.
- Defendant's claim that he "called for M[r]s. Rodrigues to get back to her vehicle, but she ignored his request and continued walking" (*Id.*) contradicts what Mrs. Rodrigues testified to, and the jury apparently credited, that *almost immediately* after he told her to "get the fuck back in" her car, the Defendant put his hands on her, and from that point on she could not voluntarily walk to the sidewalk or do anything except try to protect her body from his grasping hands.
- That being on the sidewalk "required Officer Dolan to pursue Ms. Rodrigues and physically stop her movement" is undisputedly *not true*, given the Defendant's testimony at his deposition and repeated at trial that nothing prevented him from staying on the sidewalk to give Mrs. Rodrigues the traffic citation.

Leaving aside the question of what happened once Mrs. Rodrigues and Officer Dolan were on the sidewalk, the facts in evidence were sufficient for the jury to determine, as properly instructed, that there was "no need for force" before Defendant had issued a clear order and given Mrs.

Rodrigues time to comply with it, and therefore Defendant's *initial use of force*, simultaneously or virtually simultaneously with his order to "get the fuck back in the car" or whatever the jury believed he said, was not reasonable. *See* ECF 62 at 9 ("That said, the use of force by police officers is not reasonable if there is no need for force.") There is no haze around this border.

As to the second prong of the analysis, whether that right was clearly established, the Court has already determined that it is:

> Here, as numerous courts have noted, there is "little doubt that the right to be free from excessive force is encompassed within Fourth Amendment protections." *Turkowitz v. Town of Provincetown,* 914 F. Supp. 2d 62, 73 (D. Mass. 2012); see also *Blake v. City of Providence*, No. 21-154-JJM-PAS, 2024 WL 3362988, at *3 (D.R.I. July 8, 2024) ("It goes without saying that the Fourth Amendment guarantees the right to be free from excessive force."); *Howe v. Town of N. Andover*, 854 F. Supp. 2d 131, 143 (D. Mass. 2012) (same). Likewise, "'[p]olice officers need not be reminded that the Fourth Amendment prohibits them from' engaging in excessive force." *Blake*, 2024 WL 3362988, at *3 (quoting Howe, 854 F. Supp. at 143).

*Id.* Here, Defendant asks the Court to ignore "the venerable law of the case doctrine, which states in the large that, unless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation." *Flibotte v. Pennsylvania Truck Lines*, 131 F. 3d 21, 25 (1st Cir. 1997) (citing *United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993); *Abbadessa v. Moore Bus. Forms, Inc.*, 987 F.2d 18, 22 (1st Cir. 1993)). Additionally, no reasonable officer would believe that an expired registration allows them to grab someone immediately without any kind of clear order indicating that it was a traffic stop. No one can reasonably be expected to comply with orders that were not given or with orders given without time to comply. Doing so is impossible. Only an unreasonable or incompetent officer could expect such an unnatural response under the totality of the circumstances.

As always, context matters. Using deadly force on a fleeing felon or physically grabbing and restraining a fleeing misdemeanant *may* be reasonable under certain circumstances, but it is difficult to construct a set of facts where any but an incompetent officer of the law could reasonably believe he or she was justified in manhandling, grabbing, restraining, and humiliating a thirty-one year-old, disabled housewife and mother of three school age children on a public sidewalk in broad daylight for a traffic citation, particularly before giving her a clear order and time to comply. This case does not contain such a fact pattern based on any reasonable view of the facts. As such, a grant of qualified immunity on the facts the jury seems to have found would be wholly inappropriate.

In the end, the jury had the opportunity to weigh the credibility of the witnesses, to analyze the additional evidence, and to fulfill its obligation under the Seventh, Fourth, and Fourteenth Amendments to determine what force a reasonable officer may use under the circumstances that they found to be true.

**C. Defendant's Motion for a New Trial Fails Because the Jury Weighed the Evidence Fairly, Deliberated Thoughtfully, and Considered Evidence That Was Properly Before Them.**

**i. The Jury Disagreed with Defendant's Interpretation of the Evidence and Weighed It Correctly.**

"[E]very litigant is entitled to one fair trial, not two." *Glassman Constr. Co. v. United States*, 421 F.2d 212, 215 (4th Cir. 1970). Here, Defendant had his fair trial. The jury simply did not buy Defendant's argument that driving an unregistered car justifies an officer heading straight at the driver at a high rate of speed, aggressively seizing her simultaneously or almost simultaneously with issuing a command, and then swinging her around like a rag doll against a chain link fence. Having a legal basis to stop a vehicle does not create a blank check for a traffic stop (*arguendo*) that includes whatever use of force a police officer feels like exercising. It would

be absurd to give such license without even providing any clear orders and an opportunity to comply. There is no caselaw holding otherwise.

The video evidence speaks for itself, and the jury considered it, along with the witnesses' conflicting testimony as to what happened during the nine seconds when neither Defendant nor Mrs. Rodrigues was visible. Defendant's story, as set forth in his Motion, does not successfully challenge how the jury viewed the video evidence before it. As an example: Defendant claims that Mrs. Rodrigues "did not present any evidence that the way Officer Dolan grabbed [her] was inappropriate." ECF Doc. 72-1 at 8. Given that Mrs. Rodrigues testified he had his hand on her breast, the video shows his hand on her breast and ***Daniel Dolan admitted in sworn testimony that his hand was on her breast***, this Court has every reason to trust in the jury's interpretation over Defendant's of what is or is not an appropriate way for any police officer, especially a male-presenting one, to touch a woman during a traffic stop.

Defendant searches for weight, but in the end can only lament that the jury agreed with Plaintiff's argument that Defendant should not have and did not need to use physical force to issue a traffic ticket, at least until he had given her a clear order and time to comply. Mrs. Rodrigues testified that Defendant did not give her any clear order, much less time to comply. Rather, according to her testimony, he grabbed her roughly and aggressively virtually simultaneously with his order to "get back in the fucking car." The jury apparently did not believe Defendant Dolan. That is their prerogative and Defendant, Plaintiff, and this Court are all bound to respect it. The defendant's own witness explained the verbal command portion of the use of force policy in a way that perhaps left the jurors thinking that Defendant Dolan should have tried using his words a bit more before resorting to physical force. Defendant's problem here is not that the jury could not eat from his plate of evidence, but rather that they did not care for the food he served.

### ii. The Jury Deliberated Thoughtfully and Awarded Damages Based on the Evidence Before Them.

Defendant takes issue with the jury's apparent finding that Mrs. Rodrigues suffered significant harm, including substantial emotional suffering and distress due to his actions.[2] He cites two employment law cases from 1994 and 2012 as evidence, and bemoans the fact that because Plaintiff did not seek formal mental health care, that therefore her suffering should be discounted. Not only was Plaintiff's evidence of injury sufficient for the jury to award damages in the amount they did; it is legally sufficient for the award of $360,000.

First, mental health was a core theme of the trial from *voir dire* through closing arguments, and it came from the panel of the parties' peers. The discussion that followed one query posed by defense counsel in *voir dire* touched on the importance of mental health support for police officers, foreshadowing the questioning of Defendant Dolan as to how his combat experience may have affected his police work. The writing was already on the wall that this jury was interested in mental health.

Dr. Campanile testified how Mrs. Rodrigues had been affected by traumatic events during her life and her resulting PTSD, and how as a family medicine practitioner working in poor communities, mental and emotional health were by necessity a significant focus of his interactions with patients. Dr. Campanile also spoke briefly about the underutilization of formal mental health treatment by patients in his practice.

Mrs. Rodrigues testified from her heart about how her experience being assaulted by a violent man triggered her PTSD in ways she never would have expected, nor was prepared for, and the struggle that followed. She recounted for the jury how, when she was a teenager her

[2] Plaintiff and her family doctor testified that she also had sore ribs, possibly a contusion of the bone, for which ice and ibuprofen were sufficient.

mother was murdered by a violent man, and how she witnessed her aunt being attacked with a hammer to the skull by another violent man. Mrs. Rodrigues told the jury why she cried out for "Officer Dan" while this Defendant was attacking her, and explained that *her* Officer Dan was the man who sat with her and her sisters in the hospital when her mother died and bought clothes for them to wear to the funeral. She described how on the anniversary of her mother's death, she and her sister presented an award to the other Officer Dan, in Payne Park, the same place where this Officer Dan assaulted her years later. Mrs. Rodrigues testified that it was difficult for her to watch the video of the assault, and even Mr. Dolan acknowledged that he was aware that it was difficult for her to see.

Plaintiff avers (although cannot confirm without the record) that she never said her emotional pain "resolved" after the prosecution ended, only that she did not constantly have to think of it with the same intensity or frequency. She made it clear that it was thinking about and reliving the experience, not the pending charges, that weighed so heavily on her mind. The relevance of the period of the prosecution was that it was impossible not to think about the experience often while the charges against her were still pending and that it took an unusually long period of time for such ridiculous charges to be resolved in her favor due in no small part to the COVID pandemic. That she was able to think of the experience less often after the charges were resolved in no way means that the emotional trauma and suffering ended at that point, it simply means that she was able to focus.

This jury may have been more sophisticated about mental and emotional health than a different random collection of adults, or they may reflect a growing societal understanding of mental health, what affects it, and how it affects us as humans. They may have considered the particular harm that Mrs. Rodrigues experienced to be extremely serious or felt that such utterly

unreasonable conduct on the part of Defendant Dolan would have been deeply shocking and distressing for anyone. We do not know the precise facts or analysis employed by the jury in reaching its determination on damages. Nevertheless, Defendant asks this Court, without identifying any basis in the record, to discredit the jury's ability to sift through the evidence without "improper emotion and prejudice." ECF Doc. 72-1 at 17. Such hubris is an insult not only to those individuals who served but to the very essence of the Seventh Amendment.

Moreover, the award in this case is comparable to jury awards upheld by courts for purely emotional distress, many without any expert testimony or evidence of medical treatment, many of which were decided ten (10) or twenty (20) years ago when a $250,000 award was a more substantial figure.[3] As the First Circuit explained when upholding a $300,000 emotional distress damages award, "[w]e will not disturb an award of damages because it is extremely generous or because we think the damages are considerably less, [r]ather, the defendant must establish that the award is so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law." *McDonough v. City of Quincy*, 452 F.3d 8, 22 (1st Cir. 2006) (internal citations omitted). Here, the damages award is comparable to other emotional distress awards upheld by the First Circuit over the last twenty (20) years even without evidence of mental

[3] *See, e.g., Trainor v. HEI Hospitality, LLC*, 699 F.3d 19 (1st Cir. 2012) (evidence from physician or other mental health professional not required to establish award of damages for emotional distress; evidence employee became despondent due to abrupt loss of employment he found rewarding, loss of financial security, depletion of retirement savings and strain on marriage sufficient to justify emotional distress damage award of $200,000, even in absence of any evidence he received medical treatment, counseling, or other similar attention for his despondency); *Aponte–Rivera v. DHL Solutions (USA), Inc*., 650 F.3d 803, 811-212 (1st Cir. 2011) (upholding emotional distress damages of $200,000 where employee, although experiencing some distress due to discrimination, did not introduce testimony by medical experts, experienced no "outward manifestations of emotional distress," and did not undergo long-term depression or medical treatment); *Rodriguez-Torres v. Caribbean Forms Mfr., Inc*., 399 F.3d 52, 63-64 (1st Cir. 2005) (upholding $250,000 award of damages for emotional distress where plaintiff experienced a drastic life change, financial difficulties, marital problems, and depression); *see also Pritchett v. State of New Jersey,* Docket No. L-2189-13 (N.J. Super. Ct. June 15, 2017) ($575,000 award for garden variety emotional distress for correctional officer forced to retire after multiple sclerosis diagnosis which did not affect her ability to perform duties; *Pritchett v. State*, 477 N.J.Super. 597, N.J.Super.A.D (Jan. 30, 2024), *cert. denied*, *Pritchett v. State,* 258 N.J. 435, 320 A.3d 1118 (2024)).

health treatment and cannot be reasonably said to be so grossly disproportionate to the injury as to be unconscionable as a matter of law.

iii. **The Limited Evidence as to Other Instances of Defendant Dolan Reacting with Force and Aggression to Having His Authority Challenged That This Court Admitted Was Proper and Well Within This Court's Discretion.**

First, as described at length in Plaintiff's Objection to Defendant Dolan's Motion in Limine to Exclude Other Bad Acts (ECF Doc. 59) and this Court's ruling (ECF Doc. 60), the limited evidence of Defendant Dolan's subsequent alleged uses of excessive force was appropriate to admit.[4] The evidence was submitted "to demonstrate Officer Dolan's 'intent to use excessive force to assert his authority when he felt it was being questioned,' his 'motive . . . to retaliate against civilians for questioning his authority,' and his 'pattern of intentional aggressive conduct . . . when interacting with civilians, particularly when he feels his authority is questioned.' " ECF Doc. 60 at 7 (quoting ECF Doc. 59 at 6-7). "This evidence of intent, motive, and pattern, which Rule 404(b)(2) permits, bears directly on Mrs. Rodrigues'[s] claims." ECF Doc. 60 at 7. As such, this evidence was admissible.

Beyond the Court's rationale for ruling these two incidents admissible as to Plaintiff's Fourth Amendment excessive force claim, intent and motive are essential elements of Plaintiff's common law assault and battery claims, and this evidence of intent and motive clearly has special relevance for those claims.

Additionally, such determinations are "committed to the sound discretion of the trial court" *United States v. Fields*, 871 F.2d 188, 196 (1st Cir. 1989). As the First Circuit explained in rejecting a challenge that other such 404(b) evidence in another case "lack[ed] any probative value,

[4] Plaintiff avers that the record would reveal that in a bench conference during Plaintiff's initial cross-examination of Defendant, the Court clarified the boundaries set forth in its written Order and further cabined what it deemed admissible, excluding the reported incident of domestic violence at Defendant's home, and any other incidents other than the Moreira complaint and the shooting of Dominic Vincent.

[and] so prejudiced the jury that it allowed [defendants] to be convicted of crimes not charged in the indictment[:]" "The process of balancing the need for this type of evidence and its probative value with the risk of unfair prejudice is committed to the sound discretion of the trial court." *Id*. (citing *United States v. Rubio-Estrada*, 857 F.2d 845, 846 (1st Cir. 1988); *United States v. Crocker*, 788 F.2d 802, 804 (1st Cir. 1986); *United States v. Fosher*, 568 F.2d 207, 212-13 (1st Cir. 1978)). The First Circuit reiterated that " 'it is clear in this circuit that we will give the district court considerable leeway on this matter' " and so long as a trial court "did not abuse its discretion in admitting the disputed evidence [. . . ] we [will] find no error." *Id*. (citing *United States v. Simon*, 842 F.2d 552, 555 (1st Cir. 1988); *Crocker*, 788 F.2d at 804); *United States v. Zeuli*, 725 F.2d 813, 816 (1st Cir. 1984); *United States v. Eatherton*, 519 F.2d 603, 611 (1st Cir. 1975)).

Further, this Court issued multiple limiting instructions as to this evidence to mitigate or cure any potential of unfair prejudice. As the First Circuit in *Fields* explained, this too supports the admission of such evidence and insulates it on potential appellate review, *Id*. at 198-99. ("The evidence in this case posed no risk of unfair prejudice. In addition, the trial judge gave an adequate limiting instruction when the evidence was presented and again in his instructions to the jury after closing arguments. The evidence was properly admitted.").

Defendant now also seems to object that Mrs. Rodrigues did not seek, nor did this Court allow, a trial-within-a-trial on these use of force allegations, and to put into evidence "documentation such a as pleadings, judicial findings, or other submissions for either the Moreira claim or [t]he West Greenwich [i]ncident." ECF Doc. 72 at 12. In response, Plaintiff notes that first, she is not required to—she properly admitted Rule 404 (b) evidence through testimony, and second, Defendant had every opportunity to introduce such evidence on cross-examination or in his case-in-chief, but failed to do so.

Indeed, based on the recollection of Plaintiff's counsel (because Defendant failed to provide a transcript or citations thereto), this Court limited her introduction of most materials she sought to introduce related to these incidents *on Defendant's repeated and vigorous objections to its introduction*. Any time Plaintiff sought to introduce evidence on these matters, particularly extrinsic evidence beyond merely asking Defendant about the incidents briefly and in general terms, Defendant's counsel vigorously objected. This Court generally sustained such objections, cautioning that discussion of these other incidents would be limited, brief, and would not devolve into a trial-within-a-trial.

Plaintiff can hardly be faulted for not introducing evidence in the face of Defendant's objections, and neither should this Court, which, for the most part, sustained those objections, particularly since Defendant failed to introduce any extrinsic evidence in rebuttal when he had the opportunity. Accordingly, any such objection to the failure to proffer or introduce "documentation such as pleadings, judicial findings, or other submissions for either the Moreira claim or [t]he West Greenwich [i]ncident." (ECF Doc. 72-1 at 12) must be considered without foundation and/or waived.

## IV. CONCLUSION

Even were they eligible for consideration by virtue of a proper record to which he could cite, Defendant's renewed Motion for Judgment as a Matter of Law and his Motion for a New Trial do nothing to properly challenge the disposition of this case at trial. His motions do provide an exercise to analyze and take stock of the mountain of evidence supporting the verdict, the balanced and legally sound rulings of this Court, and most of all, the thought, effort, and respect for the law with which this jury deliberated. For all the reasons set forth herein, Plaintiff prays that this Court DENY Defendant's Motion.

Plaintiff,
**EMILY RODRIGUES**
By her attorney,

/s/ Shannah Kurland
**Shannah Kurland, Esq**. (#9186)
SINAPI LAW ASSOCIATES, LLC
2374 Post Road
Warwick, RI 02886
Phone: (401) 739-9690
smk@sinapilaw.com

## CERTIFICATION

I hereby certify that on September 4, 2026 I have filed the within document to the CM/ECF where it will be available for public viewing and to counsel for Defendant:

/s/ *Shannah Kurland*